**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF WARREN GEORGE, INC., AS OWNER OF THE TUGBOAT ANNIE G II, O.N. 1105540 AND DRILL BARGE CT 511, O.N. 662709 FOR EXONERATION FROM OR LIMITATION OF LIABILITY,<br><br>Plaintiff-Petitioner. | Civil Action No.<br><br>25-cv-01539 (JXN) (JRA)<br><br>**OPINION AND ORDER** |

**José R. Almonte, U.S.M.J.**

Respondents/Third-Party Plaintiffs AECOM USA, Inc. ("AECOM") and New York City Economic Development Corporation ("EDC", collectively with AECOM, "Respondents") move to transfer this matter to the United States District Court for the Southern District of New York ("SDNY") pursuant to Supplemental Admiralty and Maritime Claims Rule F(9) (the "Motion"). Dkt. Nos. 62, 105. Plaintiff-Petitioner Warren Geroge, Inc. ("WGI") opposes the Motion. *See* Dkt. Nos. 99, 100. The Court has fully reviewed the parties' arguments in their Motion papers and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). Because an applicable forum-selection clause favors SDNY, Respondents' Motion to transfer is **GRANTED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On September 4, 2024, the Queens Midtown Tunnel (the "Tunnel") in the East River in New York City was damaged, allegedly due to drilling operations that

penetrated one of the Tunnel's tubes (the "Drilling Incident"). The damage was allegedly caused by WGI, a contractor based out of Jersey City, New Jersey, engaged in the business of commercial and marine drilling. Dkt. No. 100 at 7. Unlike most actions where a potential tortfeasor waits to be sued, WGI initiated this admiralty and maritime action seeking to exonerate or limit its liability in connection with the Drilling Incident. Dkt. No. 62-11 at 1; Dkt. No. 100 at 10. Thus, WGI is the Plaintiff-Petitioner in this action. EDC and AECOM are the Respondents.

It is worth explaining Respondents' part in this litigation. The EDC, a not-for-profit corporation, hired AECOM to provide certain engineering and landscape architectural design services for the construction of the East Midtown Greenway, which runs along the East River from East 41st Street to East 53rd Street (the "Project"). Dkt. No. 62-11 at 4; Third Party Compl. ¶ 20, Dkt. No. 47. Both EDC and AECOM are based out of New York City. Third Party Compl. ¶¶ 8–9. In connection with the Project, AECOM subcontracted with WGI to conduct certain drilling operations in the East River. *See* Dkt. No. 62-11 at 4–5. AECOM also hired GeoDesign, Inc. ("GD"), a geotechnical engineering firm, to provide geotechnical engineering services for the Project. *Id.* at 4.

On the day of the Drilling Incident, several WGI employees were operating two vessels owned by WGI, a tugboat and drilling barge, and were accompanied by an engineer from GD overseeing the drilling work. *See id.* at 2–3; Dkt. No. 100 at 8. According to WGI, after embarking from WGI's dock located in Jersey City, New Jersey, WGI's crew sailed the vessels to the location in the East River where drilling

2

for the Project was to occur.  Dkt. No. 100 at 7–8.  After the GD engineer confirmed the location and authorized drilling to begin, WGI's crew punctured the southern tube of the Tunnel that runs under the East River.  Dkt. No. 62-11 at 2; Dkt. No. 100 at 8. Subsequently, WGI commenced this action on February 28, 2025, seeking to limit its liability in connection with the Drilling Incident and arguing that the Drilling Incident was caused by others including the work of non-WGI parties responsible for determining the correct drilling location.[1]  Dkt. No. 100 at 9.  On October 31, 2025, AECOM and EDC filed the instant Motion seeking to transfer this case to SDNY.

## II.    LEGAL STANDARD

"Venue–and transfer of venue–in admiralty suits for exoneration from or limitation of liability is governed by Supplemental Federal Rule of Civil Procedure F(9)."  *In re F/V Misty Blue, LLC*, No. 17-cv-12773, 2018 WL 1837827, at *3 (D.N.J. Apr. 18, 2018).  Rule F(9) states that

> [t]he complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced against the owner, the proceedings may be had in the district in which the vessel may be, but if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district.

---

[1]  In its Complaint, WGI notes AECOM, EDC, and the New York Triborough Bridge and Tunnel Authority ("TBTA"), among others, as potential claimants against WGI.  *See* Compl. ¶ 23, Dkt. No. 1. The TBTA notified AECOM and EDC of its claim for damages concerning the Drilling Incident. AECOM's Answer ¶ 18, Dkt. No. 46; Third Party Compl. ¶ 5.  AECOM has since resolved the TBTA's claim and seeks reimbursement for moneys paid to the TBTA from WGI, GD, and/or its insurers. AECOM's Answer ¶ 19; Third-Party Compl. ¶¶ 1–4.  The TBTA's role as it relates to the Project and Drilling Incident is not clear, but WGI proffers that the TBTA owns the Tunnel.  Dkt. No. 100 at 20–21.

Suppl. Fed. R. Civ. P. F(9).

As it relates to transfers, Rule F(9) states that "[f]or the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district[.]" *Id.* The transfer analysis under Rule F(9) is similar to the one adopted under 28 U.S.C. § 1404(a), which governs venue transfers in matters where the original venue is deemed proper. *See Misty Blue*, 2018 WL 1837827, at *3; *In re Complaint of Weeks Marine, Inc.*, No. 16-cv-1463, 2016 WL 3410166, at *2 (D.N.J. June 14, 2016). However, under Rule F(9), the Court maintains discretion to transfer to any district for convenience and need not consider whether the action initially could have been brought in that transferee district. *See Misty Blue*, 2018 WL 1837827, at *3 ("The provision for transfer is revised to conform closely to the language of 28 U.S.C. [§] 1404(a) . . . , though it retains the existing rule's provision for transfer to any district for convenience.") (quoting Advisory Committee Note to Supplemental Rule F(9)); *In re Cenargo Navigation Ltd.*, No. 98-cv-4481, 1998 WL 1108990, at *2 (S.D.N.Y. Oct. 26, 1998) (noting that under Rule F(9) "a limitation proceeding may be transferred to any district without regard to whether the action could have been brought there initially."). Accordingly, in the context of a transfer motion under Rule F(9), courts "consider the factors enumerated in the rule (the same as those enumerated in § 1404): the convenience of the parties, the convenience of witnesses, and the interest of justice." *See Misty Blue*, 2018 WL 1837827, at *3.

Courts also consider private and public interest factors identified by the Third Circuit in *Jumara v. State Farms Ins. Co.*, 55 F.3d 873 (3d. Cir. 1995). *See Weeks Marine*, 2016 WL 3410166, at *2 (citing *Jumara*, 55 F.3d at 879–80). Each of those

4

factors is cloaked in multiple layers. To determine the private interests of the litigants, courts consider the following:

> [(1)] plaintiff's forum preference, . . . [(2)] defendant's preference, . . . [(3)] whether the claim arose elsewhere, . . . [(4)] the convenience of the parties as indicated by their relative physical and financial condition, . . . [(5)] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; . . . and [(6)] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) . . . .

*Jumara*, 55 F.3d at 879 (citation modified) (citations omitted).

To determine the public's interests, courts consider:

> [(1)] the enforceability of the judgment, . . . [(2)] practical considerations that could make the trial easy, expeditious, or inexpensive, . . . [(3)] the relative administrative difficulty in the two fora resulting from court congestion, . . . [(4)] the local interest in deciding local controversies at home, . . . [(5)] the public policies of the fora, . . . and [(6)] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citation modified) (citations omitted). The list of factors in both the private and public interest categories is comprehensive but not exhaustive. *See Misty Blue*, 2018 WL 1837827, at *3

## III.    DISCUSSION

Respondents argue that SDNY is the more appropriate and convenient venue for this action because the events that give rise to WGI's claim occurred in New York and most of the parties involved with the Project and Drilling Incident are based in New York. *See generally*, Dkt. No. 62-11 at 1–2. Moreover, Respondents argue that

5

there is a valid forum-selection clause that contractually obligates this matter to be litigated in SDNY.  *See id.* at 2.

WGI opposes a transfer because of the "first-filed" rule, *see* Dkt. No. 100 at 6, and also argues that the relevant private and public interest factors favor maintaining this action in NJ.  *See generally id.*  Having considered the parties' arguments, the Court finds that this case should be transferred to SDNY.  The reasons for this conclusion are explained below.

## A.  The First-Filed Rule

At the outset, the Court declines to apply "first-filed" rule.  WGI argues that because "[t]he present action was the first-filed action concerning the [Drilling Incident]," this Court, "being the first to have possession of it, should decide it."  Dkt. No. 100 at 13.  That argument misses the mark.  The first-filed rule permits courts to "exercise their discretion by enjoining the subsequent prosecution of similar cases in . . . different federal district courts."  *E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988) (citation modified).  As a policy of comity, the rule "must serve as a guide to courts of equal jurisdiction to exercise forbearance to avert conflicts and to avoid 'interference with the process of each other.'"  *Id.* at 974 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922)).  However, this authority to enjoin subsequent prosecutions "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping.  District courts have always had discretion to retain jurisdiction

given appropriate circumstances justifying departure from the first-filed rule." *Id.* at 972.

This rule is discretionary, and the Court declines to apply it here. *Weeks Marine* is exemplary of circumstances where the court declined to apply the first-filed rule notwithstanding three other subsequently filed, related actions. 2016 WL 3410166, at *3. There, in transferring a matter pursuant to Rule F(9), the court emphasized that "[t]he first-filed rule is not a hard-and-fast rule; rather, the Section 1404 factors must also be considered. Here, those factors overwhelmingly weigh in favor of transferring this action to the Southern District of New York where three related cases are pending." *Id.* Like in *Weeks Marine*, the circumstances here warrant transfer. As explained in more detail below, both the forum-selection clause and the public interest factors under the § 1404(a) analysis favor transfer.

**B. The Forum-Selection Clause**

Next, I must examine whether the forum-selection clause contained in the subcontract between WGI and AECOM requires that this matter be transferred.[2] The Court concludes it does. As noted by the Supreme Court in *Atlantic Marine Construction Co. v. U.S. District Court for Western District Of Texas*, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." 571 U.S. 49, 63 (2013) (alteration in original) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). A forum-selection clause will be deemed valid

---

[2] When in federal court, "[f]ederal law controls the question of whether to enforce a forum[-]selection clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).

in the absence of "fraud, influence, or overweening bargaining power." *Jumara*, 55 F.3d at 880.

Where a valid, mandatory forum-selection clause exists, "district courts [must] adjust their usual § 1404(a) analysis in three ways." *Canon Fin. Servs., Inc. v. Direct Impressions, Inc.*, No. 23-cv-167, 2023 WL 6140689, at *3 (D.N.J. Sept. 20, 2023) (quoting *Atl. Marine*, 571 U.S. at 63) (alteration in original).  Specifically, courts

> (1) must give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) must deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests.

*In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 63–64).  The burden shifts to the party defying the forum-selection clause to establish "that transfer to the forum for which the parties bargained is unwarranted." *Samuels v. Medytox Sols., Inc.*, No. 13-cv-7212, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (quoting *Atl. Marine*, 571 U.S. at 63).

Section 18.4 of the subcontract between AECOM and WGI states, in relevant part,

> Any claims or disputes between [AECOM and WGI] arising out of or relating to this Subcontract, which have not been resolved in accordance with the procedures set forth in this Section ***shall be subject to litigation in a court of competent jurisdiction in the state in which the project is located***.  The Parties irrevocably consent to the personal jurisdiction of said courts and waive any and all defenses of forum *non conveniens*, improper venue, or lack of personal jurisdiction.

Ex. G. at 11, Dkt. No. 62-8 (emphasis added).  WGI does not argue that it was induced by "fraud, influence, or overweening bargaining power" to agree to this provision. *Jumara*, 55 F.3d at 880.  Therefore, the forum-selection clause is valid, and WGI

8

carries the burden to demonstrate why it should not be bound by its choice of forum. *See Samuels*, 2014 WL 4441943, at *4.  WGI argues that even if the forum-selection clause applies to this action, that the clause is permissive, not mandatory, and does not prohibit litigation here.[3]  Dkt. No. 100 at 21.

"A forum[-]selection clause is mandatory if it 'requires a plaintiff to sue in the designated forum,' whereas a permissive forum[-]selection clause merely authorizes the parties to file suit in the selected forum."  *Samuels*, 2014 WL 4441943, at *5 (quoting *Jones v. Custom Truck & Equip., LLC,* No. 10-cv-611, 2011 WL 250997, at *5 (E.D. Va. Jan. 25, 2011)).  Naturally, the precise language of the clause at issue matters, and a mandatory clause must include language that clearly "dictates an exclusive forum for litigation under the contract."  *See Becton, Dickinson & Co. v. Medline Indus., Inc.*, No. 21-cv-12929, 2022 WL 2383722, at *4 (D.N.J. Apr. 28, 2022) *(*quoting *Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d. Cir. 2014)) (finding a forum-selection clause was permissive because it provided that "New Jersey is a 'non-exclusive' forum"); *Andujar v. Hub Grp. Trucking, Inc.,* No. 23-cv-16987, 2024 WL 1715334, at *5 n.5 (D.N.J. Apr. 22, 2024) ("the forum[-]selection clause states

---

[3] WGI also challenges the clause's application on two other grounds: (1) that WGI never entered any contract with the TBTA, the "primary claimant" in this action which owns the Tunnel, Dkt. No. 100 at 20–21, and (2) that "the incident giving rise to this litigation did not arise out of nor is it related to any claim that WGI is asserting against AECOM," or vice versa. *Id.* at 21.  These arguments are unavailing.  The forum-selection clause applies to "[a]ny claims or disputes between [AECOM and WGI] arising out of or relating to this Subcontract[;]" Ex. G. at 11.  In other words, any claim relating to the Project is subject to the forum-selection clause.  It strains credulity that the claims in WGI's Complaint, based entirely out of WGI's work in connection with the Project, do not fall under the purview of the forum-selection clause.  Nor does WGI convince the Court that the TBTA must be a party to the subcontract between WGI and AECOM.  The bottom line is that WGI was working for AECOM, not the TBTA, when this Drilling Incident occurred.  Therefore, it stands to reason that claims arising from that Drilling Incident, like WGI's claims in this action, should be governed by the contract between AECOM and WGI.

that claims '**shall** be brought **exclusivel**y in the state or federal courts sitting in Memphis, Tennessee.' . . . This is language typical of a mandatory forum[-]selection clause.") (emphasis in original); *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018) (finding a forum-selection clause was mandatory because it stated that "claims subject to the clause '*shall be decided* in the Superior Court of the State of New Jersey,' and that 'venue of any such action *shall be placed* in Passaic County, New Jersey.'") (emphasis in original).

Here, the forum-selection clause states that any claim or dispute "***shall be*** subject to litigation in a court of competent jurisdiction ***in the state in which the project is located***." Ex. G. at 11 (emphasis added). The word "shall" gives this forum-selection clause mandatory effect and confers sole jurisdiction to New York where the Project was located. *See Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 13-cv-7318, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) ("[T]he Court notes that, in this Circuit, a forum[-]selection clause need not contain language such as 'exclusive' or 'sole' in order to be mandatory. . . . Rather, inclusion of the word 'shall' sufficiently evinces a forum[-]selection clause's mandatory nature.") (citation modified). Accordingly, the forum-selection clause requires that this matter be transferred. [4]

---

[4] The Court need not consider the *Jumara* private interest factors because there is a valid, mandatory forum-selection clause. *See Becton*, 2022 WL 2383722, at *3–4. But even under the private interest factors, the Court finds that transfer to SDNY is warranted. No party disputes that the events that form the basis of WGI's Complaint occurred in New York. Where the claim arose is "the most critical to the Court's [§ 1404(a)] analysis[.]" *Metro. Life Ins. Co. v. Bank One, N.A.,* No. 03-cv-1882, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012); *In re Viking Sport Cruisers, Inc.*, No. 15-cv-8749, 2017 WL 729691, at *2 (D.N.J. Feb. 24, 2017) ("First, the collision occurred in Rhode Island. Caselaw demonstrates that this factor is frequently '[o]f primary significance' in the transfer analysis [under Rule F(9)]."). Courts have found that this factor would warrant transfer even in circumstances where

## C. Public Interest Factors

In *Atlantic Marine,* the Supreme Court noted "[b]ecause [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." 571 U.S. at 64. Here, the circumstances are not so unusual as to warrant defeat of the Motion. Both Respondents and WGI largely dispute the fourth public interest factor, the local interest in deciding local controversies at home. Respondents argue that this factor favors transfer to SDNY because "this case concerns damage to major public infrastructure located in New York and which had a substantial effect on the travel of thousands of New Yorkers." Dkt. No. 62-11 at 15. In contrast, WGI argues that New Jersey has "a significant interest in regulating its vessel owners and citizens[,]" as well as its businesses. Dkt. No. 100 at 23.

Respondents prevail on this argument. "The public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose." *LG Elecs, Inc. v. First Intern. Comp.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001). "The location where the claim arose is also a public interest factor

---

the fora are in proximity. *See Weeks Marine, Inc.*, 2016 WL 3410166, at \*2; *Kelly-Brown v. Winfrey*, No. 11-cv-4360, 2011 WL 5325596, at \*3 (D.N.J. Nov. 3, 2011) (transferring to SDNY and stating that "a plaintiff's choice deserves little deference when the chosen forum has little connection to the facts underlying the claims."). The parties' convenience arguments fail to establish how litigating in either district is inconvenient; nor can they—both districts are directly adjacent. *See Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-cv-05805, 2014 WL 1555133, at \*7 (D.N.J. Apr. 14, 2014), *aff'd*, 2014 WL 3748214 (D.N.J. July 29, 2014) ("While it is true that Defendant provides no evidence of a financial burden in litigating in New Jersey, Plaintiffs have not provided the Court with evidence of the like in litigating in New York."). Regardless, the situs of the Drilling Incident alone outweighs Plaintiff's choice of forum. *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998) ("[W]hen the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight."); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 323–24 (D.N.J. 1998) (a plaintiff's choice of forum decreases where "the central facts of a lawsuit occur outside the chosen forum."). Therefore, the private interest factors largely weigh in favor of transfer.

11

because local judges and juries are preferred arbiters of events in their jurisdiction and community." *Id.* Here, the Drilling Incident occurred only in New York, and there is no doubt that New York has a strong interest in handling matters that occur in its waters. Indeed, WGI expects Respondents to file claims in connection with the Drilling Incident, which is why it seeks a limitation of liability. *See* Dkt. No. 100 at 10. If and when such occurs, New York is the jurisdiction best suited to handle all related matters. *See Weeks Marine*, 2016 WL 3410166, at \*3. Therefore, the public interest factors weigh in favor of transfer to SDNY. [5]

## ORDER

For the reasons set forth above, it is on this **6th** day of **April 2026,**

**ORDERED** that Respondents' Motion (Dkt. No. 62) is **GRANTED**; therefore, this matter is hereby **TRANSFERRED** to SDNY. The parties have fourteen days to appeal this Opinion and Order. *See* L.Civ.R. 72.1(c)(1)(A).

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Orig:  Clerk of the Court
cc:    Counsel of Record
       The Honorable Julien X. Neals, U.S.D.J.

---

[5] The remaining public interest factors are all neutral. First, a judgment, or in this case, a limitation on liability, rendered in either this District or SDNY could easily be enforced in another district. No one has argued otherwise. Second, no related matters are yet pending, and therefore, practical considerations that would make "trial easy, expeditious, or inexpensive" do not weigh in favor of either district. *See LG Elecs*, 138 F. Supp. 2d at 592. Third, relative administrative difficulty in the two fora from court congestion is a factor of minimal importance. *See Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008). Notwithstanding, this factor is neutral because both district courts have been historically congested with a heavy caseload. Even if this District were presently less congested than SDNY—a factor which has not been proven— that alone would not change the Court's decision. Finally, the applicable law should not be difficult for either district to interpret. This is a matter of maritime law—a matter under federal jurisdiction— and both districts are equipped to handle these matters. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 69 (2024) ("Under the Constitution, federal courts possess authority to create and apply maritime law.").

12